IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DONALD PARKELL,

    Plaintiff,

v.                                            C.A. No. 17-1496-LPS

Maria Lyons, et al.,

    Defendants.

James S. Green, Sr., SEITZ, VAN OGTROP & GREEN, P.A., Wilmington, DE

    Attorney for Plaintiff

Stephen M. Ferguson and Ryan P. Connell, Deputy Attorneys General, Department of Justice, Wilmington, DE

    Attorneys for the Defendants and the State of Delaware

**MEMORANDUM OPINION**

September 4, 2020
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court is Defendants Orlando DeJesus, Vincent May, and William Howard's ("Defendants") Motion for Summary Judgment for Plaintiff's Failure to Exhaust Administrative Remedies. (D.I. 46) Plaintiff Donald Parkell ("Plaintiff" or "Parkell") opposes the motion. (D.I. 48) Having reviewed the parties' briefing and the other materials in the record (*see* D.I. 46, 48, 48-1, 48-2, 49), and for the following reasons, the Court will grant Defendants' motion.

## I. BACKGROUND

On October 24, 2017, Plaintiff filed a *pro se* Complaint against Department of Correction ("DOC") employees at James T. Vaughn Correctional Center ("JTVCC"), alleging a violation of his First Amendment Right of Freedom of Speech and Expression (Count I); Retaliation (Count II); Interference with Access to the Courts (Count III); and Violation of Legal Privacy (Count IV). (D.I. 1)

The claims against the moving Defendants DeJesus, May, and Howard arise from an incident on October 11, 2017. According to Plaintiff, Defendants May and Howard did not allow Plaintiff to take his legal file to a scheduled legal visit with his attorney and, instead, searched his legal file and confiscated items from that file, including three hand-drawn portraits that Plaintiff intended to use as exhibits in another pending case. (D.I. 1 ¶¶ 1, 13-14, 24-28, 35-39, 48-51, 56-58) The claim against Defendant DeJesus arises from his position as supervisor of May and Howard. (*Id.*)

Defendants have previously moved to dismiss Plaintiff's Complaint for failure to exhaust administrative remedies. (D.I. 27) The Court denied Defendants' motion after the parties agreed

1

that additional limited discovery was warranted on the issue of exhaustion. (D.I. 38 at 1) In allowing discovery, the Court denied Defendants' motion without prejudice to renew.[1] (*Id.*)

Subsequently, Defendants produced an incident report (dated April 11, 2018), approved by DeJesus, which provides details of the October 11, 2017 incident. The report explains that May advised Plaintiff he was not allowed to take any items to a legal visit unless his lawyer requested such items be brought with him. (D.I. 48-2 (Green Aff.) Ex. A) Howard states that he reviewed an email from Plaintiff's attorney, who did not request that Plaintiff bring materials with him to the meeting. (*Id.*) At that time, Defendants decided that Plaintiff's items were not allowed for his legal visit. (*Id.*) Plaintiff's attorney was advised that, in the future, he must put in writing his request that Plaintiff bring legal related materials to meetings with him. (*Id.*)

Defendants further produced the "Inmate Visitation" policy, which provides: "[i]nmates are only permitted to bring legal material with them to their professional visit. Such material must be minimal and in a small envelope or folder." (D.I. 48-2 (Green Aff.) Ex. E) Defendants did not produce the policy they referenced in denying Plaintiff the right to bring his file to the October 11, 2017 visit with his attorney. (D.I. 48 at 5)

Plaintiff submitted a declaration stating that he took the following steps after the October 11, 2017 incident, in an effort to resolve the issue. (D.I. 48 -1 (Parkell Decl.)) Parkell states that he (1) filed a grievance; (2) discussed his grievance with Defendant DeJesus; (3) wrote to the area commander; and (4) wrote to the security superintendent and the Warden. (*Id.*) (citing D.I. 48-1 (Parkell Decl.) ¶¶ 14-17) Plaintiff further states in his declaration that DeJesus told him

---

[1] The Court granted Defendants' motion to dismiss for failure to state a claim against Defendant Little. (D.I. 38) Plaintiff voluntarily dismissed Defendants Pierce and Lyons from the case. (D.I. 33) Thus, DeJesus, Howard, and May are the only remaining defendants in this action.

that because Internal Affairs was involved, the issue regarding the confiscated documents was not grievable. (D.I. 34-1 Ex. 2 (Parkell Decl.) ¶ 25; D.I. 46 Ex. B (Dutton Decl.) ¶ 4)

DeJesus submitted a declaration stating that he was not aware Plaintiff had filed a grievance, and did not tell Plaintiff the issue was non-greivable or invalid. (D.I. 49 Ex. 1 (DeJesus Decl.) ¶ 5) Instead, he told Plaintiff that the documents had been sent to Internal Affairs. (*Id.* ¶ 4) Defendants further contend this case involved a staff issue. (D.I. 46 Ex. B (Dutton Decl.) ¶ 4) As such, if Plaintiff had filed a grievance, Sergeant Dutton, the Institutional Grievance Chairperson, would have forwarded it to the unit commander, Captain Dotson, so the staff issue could be addressed. (D.I. 46 Ex. B (Dutton Decl.) ¶¶ 2, 4) Dotson testified that he has no record or recollection of any of the issues raised by Plaintiff's claims in this action. (D.I. 46 Ex. F (Dotson Decl.) ¶ 2)

The results of the parties' discovery also include 655 pages of documents that Defendants produced regarding the exhaustion issue. The majority of these pages were grievances filed by Plaintiff from November 30, 2008 through January 2, 2018. (D.I. 48-2 (Green Aff.) ¶ 4) No grievances were recorded or produced from August 12, 2017 and December 26, 2017. (*Id.*; D.I. 46 Ex. B (Dutton Decl.) ¶ 4; D.I. 46 Ex. C (Grievance Report); D.I. 46 Ex. E (Plaintiff's Response to Defendants' First Request for Production)) Plaintiff's response to Defendants' interrogatory number 1 states that he filed a grievance but does not know what happened to it. (D.I. 46 Ex. D) (Plaintiff's Answers to Defendants' First Set of Interrogatories on the Issue of Exhaustion)

3

## II.  LEGAL STANDARDS

### A.  Summary Judgment

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal

4

quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

### B. Prison Litigation Reform Act

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e; *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). The PLRA requires "proper exhaustion," meaning exhaustion of those administrative remedies that are "available." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion means using all steps provided by the prison so that prison officials address the issues on the merits." *Bickel v. Miller*, 446 F. App'x 409, 412 (3d Cir.

5

2011). It is the inmate's responsibility to pursue the exhaustion of the administrative process. *See id.*

In actions subject to the PLRA, a district court may elect to resolve factual disputes regarding exhaustion without the participation of a jury, including on a summary judgment motion. *See Paladino v. Newsome*, 885 F.3d 203, 210 (3d Cir. 2018) (citing *Small v. Camden Cty.*, 728 F.3d 265, 269 (3d Cir. 2013)); *see also see also Werner v. Sorbin*, 2017 WL 3582382, at *3 (W.D. Pa. Aug. 18, 2017) (granting summary judgment and holding that while exhaustion issue "normally entails an evidentiary hearing before the judge," disputed issues of fact could be resolved on record). Before doing so, however, the district court must provide the parties with notice and an opportunity to submit materials relevant to exhaustion that are not already before it. *See Paladino*, 885 F.3d at 211.

## III. DISCUSSION

Having reviewed the parties' evidence on exhaustion, the Court finds that a material fact dispute exists as to whether Plaintiff filed a grievance. Nonetheless, the Court will grant summary judgment in favor of Defendants because, even if Plaintiff filed a grievance, Plaintiff could not have exhausted his administrative remedies in the 13 days that elapsed between submitting a grievance (if he did so) and filing this action. Therefore, Defendants are entitled to judgment as a matter of law.

### A. Plaintiff's Grievance

Defendants first ask the Court to grant summary judgment because Plaintiff did not file a grievance and, therefore, did not exhaust his administrative remedies, which is required under the PLRA. According to Defendants, the only evidence to support the contention that Plaintiff filed a grievance regarding the October 11, 2017 incident is his own statement, which is insufficient.

6

(*See* D.I. 46 Ex. B (Dutton Decl.) ¶ 4) No grievances were recorded as filed within ten days after October 11, 2017. (D.I. 46 Ex. C) DeJesus testified that he was not aware of Plaintiff having filed a grievance and that he never told Plaintiff it was not grievable or was invalid. (D.I. 49 Ex. 1 (DeJesus Decl.) ¶ 5) Moreover, had Plaintiff filed his purported grievance, it would have been treated as a "staff issue" and routed to the unit commander, Captain Randall Dotson, but Dotson has no record or recollection of any of the issues raised by Plaintiff. (D.I. 46 Ex. F (Dotson Decl.) ¶ 2)

Plaintiff counters that he is a savvy litigant, having filed dozens of grievances and numerous lawsuits. For every issue that he believed warranted suit, he first exhausted all in-house options, as he understood is required. (D.I. 48-1 (Parkell Decl.) ¶ 4) Plaintiff contends that Defendants "subverted the only available means for him to seek an administrative remedy" by telling him there was nothing to do about his issue because it was an "Internal Affairs" matter. (D.I. 48 at 3) In this way, according to Plaintiff, Defendants blocked his only administrative remedy by preventing him from filing a grievance. (*Id.* at 7)

Plaintiff also blames the DOC for his missing grievance because it "created a system whereby these very Defendants [were] entrusted with conveying a complaint about themselves through proper channels (May and Howard) and even deciding if a grievance [could] be filed (DeJesus)." (*Id.* at 4; *see also* D.I. 48-1 (Parkell Decl.) ¶¶ 11-12, 19-20, 23-25) Additionally, to Plaintiff the August to December 2017 gap in his grievances file shows that in this period Defendants and the DOC had stopped processing his grievances. (*Id.* ¶ 4)

Plaintiff uses the incident report filed by Defendants six months after the October 11, 2017 incident as a basis to challenge their credibility. (D.I. 48 at 4) According to Plaintiff, the incident report – which states that Defendants confiscated Plaintiff's documents because

7

Plaintiff's lawyer did not request that Parkell bring documents to their legal visit – was a pretext for confiscating Plaintiff's documents. (*Id.*) (citing D.I. 48-2 (Green Aff.) Ex. A) According to Plaintiff, the actual policy in effect at the time allowed inmates to take their legal files to visits with their attorney. (D.I. 48-2 (Green Aff.) Ex. E) Moreover, Plaintiff's attorney argues that he did, in fact, request to exchange documents with Plaintiff during the October 11, 2017 meeting. (D.I. 48-2 (Green Aff.) Ex. B) Defendants never produced the policy on which Defendants relied on in their incident report. (D.I. 34 Ex. 1 (Green Aff.) ¶¶ 2, 7, 8)

Viewing the record in the light most favorable to Plaintiff, the non-moving party, the Court finds that there remains a genuine issue of fact as to whether Plaintiff filed a grievance. Having filed 562 pages of grievances from November 30, 2008 to January 2, 2018, a reasonable factfinder could certainly find that Plaintiff has a history and familiarity with the grievance procedure at JTVC. (*See, e.g.*, D.I. 48-2 (Green Aff.) ¶ 4) Plaintiff also points to testimony of Officer Senato in another one of Plaintiff's cases (*Parkell v. Senato*, C.A. No. 14-446-LPS (D. Del.), in which Senato purportedly admitted that the DOC had stopped processing Plaintiff's grievances. (D.I. 34 Ex. 3 at 135) Notably, and uncharacteristically, there is an absence in the record of any grievances being filed by Plaintiff between August 2017 and December 2017. (D.I. 48-2 (Green Aff.) ¶ 4) Defendants' declarations from DeJesus, Dotson, and Dutton do not explain a thorough process to search for Plaintiff's grievance. (*See, e.g.*, D.I. 46 Ex. B, Ex. F; D.I. 49 Ex. 1)

A reasonable factfinder, taking the evidence in the light most favorable to Parkell, could find that Defendants' failure to find any record of Plaintiff's grievance does not mean that he did not file such a grievance. *See, e.g., Livingston v. Piskor*, 215 F.R.D. 84, 86 (W.D.N.Y. 2003) ("Although it may be difficult at times to prove the ***absence*** of a record, there is simply

8

insufficient evidence before me for the Court to conclude as a matter of law that plaintiff did not file a grievance concerning these matters."). Therefore, summary judgment cannot be granted on the basis for Plaintiff's purported failure to exhaust based on failure even to file a grievance.[2]

## B. Exhaustion of Administrative Remedies

The second ground on which Defendants move for summary judgment is meritorious. (*See* D.I. 46 at 4) The Court agrees with Defendants that, even assuming Plaintiff filed a grievance, summary judgment is warranted because no reasonable factfinder could find that Plaintiff exhausted all of his available administrative remedies.

The undisputed timeline is as follows: the incident with Defendants' paperwork occurred on October 11, 2017; Plaintiff signed his Complaint five days later, on October 16, 2017; and Plaintiff filed his Complaint on October 24, 2017 – only 13 days after the incident. (D.I. 46 at 2 ¶¶ 5, 9) No reasonable factfinder could find that this maximum of less than two weeks was sufficient time to permit Defendants to consider Plaintiff's grievance. Section 4.4 of the Policy of Department of Correction sets out a multi-level process for addressing "staff issues" like the one presented in Plaintiff's Complaint. The process involves, first, a Supervisor/Unit Commander; then, if the inmate is dissatisfied or does not receive a response, the process moves to the security superintendent; and, finally, if the inmate remains dissatisfied, the grievance is reviewed by the Warden. (*See* D.I. 48 Ex. A) These steps could not all have happened in less than two weeks, as 13 days is not a sufficient amount of time in which each level of this multi-tier review could undertake a meaningful consideration of the grievance presented. (*See, e.g.,*

---

[2] Although it does not affect the outcome on the Motion, or even affect the Court's conclusion that a reasonable factfinder could find that Plaintiff filed a grievance, the Court also concludes that there is not sufficient record evidence to support Plaintiff's contention that DeJesus intentionally intercepted his grievance, thereby preventing Captain Dotson and Sergeant Dutton from reviewing it. (*See* D.I. 48-1 (Parkell Decl.) ¶¶ 24, 26; *but see, e.g.,* D.I. 49 Ex. 1 ¶¶ 4-5)

9

D.I. 49 ¶¶ 6, 9 ("Plaintiff cannot collapse the multi-level process by writing to all officials at once and then filing suit before any of them have had a reasonable opportunity to respond."))

Plaintiff's response is unavailing. He contends that he exhausted all available remedies when he filed a grievance, discussed his grievance with Defendant DeJesus, wrote to the area commander, and wrote to the security superintendent and the Warden. (*See* D.I. 48-1 (Parkell Decl.) ¶¶ 14-17) Plaintiff further contends that he waited to see what action would be taken on his grievance before filing his Complaint. (D.I. 48 ¶ 5) Even crediting that Plaintiff did all that he contends, he failed to exhaust his administrative remedies because he did not allow sufficient time for the multi-step process to meaningfully consider and resolve the "staff issue" about which he was grieving. (*See, e.g.*, D.I. 46 Ex. B (Dutton Decl.) ¶ 6) The 13 days that Plaintiff allowed (at most) was simply an insufficient amount of time in which to permit each level of the review process to consider the grievance and response to it.[3]

Because Plaintiff failed to exhaust his administrative remedies, the Court will grant summary judgment to Defendants.

## IV. CONCLUSION

For the foregoing reasons, and with Plaintiff having been given notice and opportunity to respond to the issue of exhaustion, Defendants' motion for summary judgment is granted. An appropriate Order follows.

---

[3] The prison gives itself a 180-day window to complete the administrative grievance process. (*See* D.I. 46-1 Ex. A (Inmate Grievance Policy Section 4.4) at D000004; *see also Biggins v. Addogoh*, C.A. No. 12-1666-GMS D.I. 79 at 2 n.1 ¶ 6 (D. Del. June 23, 2015))

10